ELIAS RICHARDSON *et al.*

*v.*

HIRAM D. OLMSTEAD.

74  213
28a 406

74  213
130  215

74  213
38a 101

74  213
47a 174

74  213
70a 641

74  213
j201 ¹619
103a ¹521

1. CONTRACT — *whether of sale or bailment.* Where grain is received by a dealer, into his warehouse, under a contract to pay the owner the market price on any day he may choose to call for it, and such grain is mixed with other grain in bins, from which shipments are being made every day, the dealer becomes the owner of the grain and liable to pay for it whenever called on, and is not a mere bailee.

2. Where grain has been delivered to a dealer at his warehouse under a contract on his part to pay the market price for it when called for, and he mixes it with other grain in bins, from which he is constantly shipping, and after such grain has all been delivered, the party delivering it not needing the money, and believing the price will be higher, proposes to leave the grain in the warehouse of the dealer until a specified time, to which the dealer agrees for a consideration to be paid him, the title to the grain is in the dealer, and the effect of the last contract is simply to give the party delivering until the time specified to name the day on which he will take the market price.

APPEAL from the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. CHARLES BLANCHARD, for the appellants.

Mr. D. B. SNOW, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of assumpsit, brought by Hiram D. Olmstead, in the circuit court of La Salle county, against Elias and William N. Richardson, to recover the value of a certain quantity of corn claimed to have been sold and delivered.

A trial of the cause was had before the court without the intervention of a jury, which resulted in a judgment in favor of appellee for $419.09. To reverse this judgment the defendants have prosecuted this appeal.

The only question presented by this record is, whether the

contract under which the grain in question was delivered and held by appellants was one of bailment or sale.

In order to obtain a clear understanding of the question, a brief statement of facts becomes necessary.

The appellants kept a warehouse in the city of Ottawa, and were engaged in buying and shipping grain; on the 27th day of May, 1870, appellee made a contract with them by which he was to deliver his grain at their warehouse, and they were to pay him for the same the market price of grain on any given day he might elect to call upon them for payment; under this arrangement appellee placed his entire crop in appellants' warehouse, a portion of which, as delivered, he elected to take the then market price for, and received payment under the contract. All grain delivered prior to August 5 was paid for. On the 6th of August appellee commenced delivering corn, and from that time to August 25, he delivered nine hundred and thirty-one bushels, which is the grain in controversy. All grain delivered by appellee, as delivered at the warehouse, was mixed with other grain, and appellants were constantly receiving grain from various parties which was placed in a common bin in the warehouse, and they were from time to time making shipments from the warehouse to market.

In the month of April, 1871, appellants' warehouse, with its contents, was destroyed by fire.

Thus far there is no dispute between the parties in regard to the facts. William Richardson, one of the appellants, testified that about the 1st of November, 1870, appellee came to their office and said he wanted to leave his corn over until spring; that his son would sell his corn as he needed the money, but he, appellee, did not need money and would not sell; I told him that we would have to charge him storage if he left it over the winter; he wanted to know what it would be. I told him we had agreed to store for other parties at three cents. The conclusion was, he was to pay three cents per bushel storage.

Elias Richardson, the other appellant, testifies, in substance, to the same.

This, however, appellee in his evidence flatly denies. He testifies that no arrangement or contract of any character was made except the one entered into on the 27th day of May before he commenced the delivery of grain.

Whether this last agreement to hold the grain until spring was actually made or not, in the view we take of the case, can make no difference in regard to the rights of the parties.

It was not contemplated or expected by either party to the record, that appellee was ever to receive back from appellants the identical corn delivered in the warehouse; the manner in which the grain was handled rendered this utterly impossible. Appellee's corn was not kept separate, but as fast as received was mixed with other grain, and, no doubt, long prior to the fire, had been shipped and sold in the market; but whether it had or not, appellants at no time after the grain was delivered would have been able to pick out and redeliver appellee the corn received of him. They, no doubt, at any time prior to the fire, had in hand and were able to furnish appellee corn of like quality and amount as that received, but that is a fact of no importance and could not change the rights of the parties as they became fixed by the contract and delivery of the corn.

If, then, it be true, as contended by appellants, that the corn was not actually sold, but held in store under the arrangement made in November, 1870, then they would be required to redeliver the identical corn on demand, or pay its value.

In the case of *Lonergan* v. *Stewart*, 55 Ill. 45, the same question arose as is presented by this record. It was there held by the court, when the identical thing delivered is to be restored, though in an altered form, the contract is one of bailment, and the title to the property is not changed, but where there is no obligation to restore the specified article, and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return, and the title to the property is changed. See, also, 2 Kent, sec. 590; Story on Bailments,

secs. 283, 439; *Wilson* v. *Finney,* 13 Johns. 358; *Chase* v. *Washburn,* 1 Ohio St. 244.

The record before us presents a much stronger one, however, in favor of appellee, than would arise against a warehouseman who received grain on store, mixed it with other grain of like kind, and agreed to return like quantity and quality on demand. Here, under the contract made, neither was the identical corn, or corn of like quality, to be returned, but the market value of the grain was to be paid appellee on any day he should see proper to call for the same. This can be regarded in no other light than an actual sale. The amount to be received was the market price on a day thereafter to be named by appellee; neither did the arrangement, which appellants claim was made in November, materially change the contract. That arrangement must be construed in connection with the original contract. By the original contract appellee had the right to name the day he would receive the market price for his grain. Appellants say these contracts were usually settled up before navigation closed. Appellee was not satisfied to take the then market price of corn. He did not need the money—thought it would be higher; under these circumstances appellants agreed, in consideration of three cents per bushel, which they term storage, that appellee's right to name the day upon which he would take the market price for his corn might be extended over until spring. This is the only fair construction that can be placed upon the second arrangement made.

It left the original contract in force and merely extended the time in which appellee had a right to elect the day he would receive the market price for the grain.

Under the facts as they are claimed to exist, by either appellants or appellee, we are of opinion the judgment rendered by the circuit court was correct, and it will therefore be affirmed.

*Judgment affirmed.*