# William Harrison
## v.
## Louis A. Lenz, Sheriff.

*Trespass—Sale of Goods Held on Consignment—Bailments.*

1. Whether a certain written contract in a given case amounts to a sale of goods, or whether it is a consignment and not a sale, are questions of law to be determined therefrom.

2. When the identical article delivered is to be restored in the same or an altered form, the contract is of bailment, and the title to the property is not changed; but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, or the money value, he becomes a debtor to make a return and the title to the property is changed; it is a sale.

3. In an action of trespass brought against a sheriff to recover the price of certain goods sold by him on an execution in favor of a person named, the plaintiff contending that the same were consigned to the execution debtor as his agent, and the defendant taking the ground that the transaction was a sale, this court construes the written contract and holds that the same and the transaction under it did not amount to a sale, express or implied; that it was simply a bailment, and renders judgment for the plaintiff,

[Opinion filed May 25, 1893.]

Appeal from the Circuit Court of Marshall County; the Hon. T. M. Shaw, Judge, presiding.

Messrs. John E. Pollock and Edward Barry, for appellant.

Mr. Fred. S. Potter, for appellee.

Mr. Justice Lacey. This was an action of trespass by appellant against appellee, sheriff of Marshall County, Illinois, to recover the price of certain goods sold by the appellee on an execution in favor of Martin & Co., dated August 12, 1892, against the goods and chattels of T. L. Harrington, the said goods being levied on as the property of Harrington. The appellant was a wagon manufacturer, residing and carrying on his business in Grand Rapids, State of Michigan. Harrington resided in Henry, Marshall County, Illinois, and was engaged in the sale of wagons at that place, and held certain wagons belonging to appellant on consignment as his agent or factor for sale as is insisted by the latter, but as purchaser and owner as is insisted by appellee. By agreement of the parties on the trial it was stipulated that in case of recovery, appellant should recover the invoice price of the goods as shown by the contract introduced in evidence, and that there were twenty-one wagons sold by the sheriff on the execution against Harrington. The invoice price of twelve of the wagons was $45 each and twelve of them $47 each. There were three of them sold by Harrington. It does not appear what the

invoice price of the three sold was, forty-five or forty-seven dollars each.    But allowing the three to be of the $47 class, it would leave nine of the twenty-one sold by the sheriff of the $47 wagons and the balance of the $45 wagons, or the amount realized by the sheriff according to stipulation of $963.

There was but one consignment of goods made by the appellant to Harrington and that was of the date of 1st day of June, 1893, under a written contract between the parties dated 4th March, 1893, and the wagons levied on and sold by the appellee were a part of that consignment.    There is no evidence to show that Harrington ever represented to any one that he was the owner of the wagons or that appellant ever authorized him to do so; but on the contrary Harrington informed one of the execution creditors before the execution was issued that he was not the owner of the wagons but held them on consignments.    There is no evidence of any actual fraud in the relations of appellant and Harrington or covert attempt to deceive the public.    The entire case hinges on the construction to be given to the contract between Harrington and appellant under which the wagons were shipped.    If under a fair construction it was a sale then the court below decided the case correctly; if a consignment, then error was committed and the judgment should have been for appellant.    The substance of the contract is as follows:    First.    Appellant appointed Harrington to act as his agent for the sale of wagons in Henry, Illinois.    Second.    Harrington accepts the agency and agrees to pay all the freight, local and general taxes on the wagons, have the property housed and under cover and will make good any loss or damage by fire; pay all expenses whatever; will sell to no person or firm on credit, except such as is of undoubted solvency and financially responsible, and on all time sales, which shall not exceed twelve months, will take notes on blanks furnished by and payable to the order of William Harrington (the blanks furnished were payable to Harrington, however), with interest at the rate of seven per cent per annum from date of sale; will indorse all

Harrison v. Lenz.

notes guaranteeing their prompt payment when and where due; will so conduct the business that the time of final payment in Grand Rapids shall not exceed twelve months from date of shipment; will transmit to the office of appellants the proceeds of each cash sale or part cash sale on the day the sale is made, or by first mail thereafter; and on the last day of every month will make out an account of all sales for the current month and transfer the same together with all notes to the office of the party of the first part; and at any time thereafter twelve months from date of shipment, to give his own note for balance of consignment unpaid on four months, with interest at seven per cent from date last above named, if so required by the party of the first part (appellant); but nothing herein shall be construed as amounting to a positive sale without said requirements, and that during the continuance of the contract they will sell no wagon other than the Harrison wagon. Third. It was agreed that the party of the first part (appellant) will invoice all wagons to the party of the second part at the price specified on the back of the agreement, and that on final settlement of each consignment all sums over and above such specified price for which the party of the second part may sell the wagons shall be allowed to the party of the second part as full commission and all other charges more especially enumerated in clause two of this agreement. Fourth. All wagons shipped by the party of the first part shall be on the terms specified in the agreement unless named otherwise in the order and invoice. Fifth. In case the party of second part disregards in any manner any of the covenants of the agreement the same shall, at the option of the said party of the first part, at once cease and determine and the party of the second part shall deliver to the party of the first part on demand all wagons or parts of the same unsold free from any charge whatever.

Whether the above contract amounts to sale of any goods delivered to Harrington in accordance with its terms and is a device under the guise of a consignment and agency to secure the appellant in the transactions, or whether it is a

consignment and not a sale in fact, are questions purely of law to be determined from an inspection of the contract itself as fully held in Chickering v. Bastress, 130 Ill. 206; Murch v. Wright, 46 Ill. 487.

It has often been held in this State as a guiding rule, as found in the following authorities, that " it is a settled rule that when the identical article delivered is to be restored in the same or an altered form, the contract is of bailment and the title to the property is not changed; but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value or the money value, he becomes a debtor to make a return and the title to the property is changed; it is a sale." Chickering v. Bastress, *supra;* Lonergan v. Stewart, 55 Ill. 49 and authorities there cited; Richardson v. Olmstead, 74 Ill. 213. So in the case of Chickering v. Bastress, *supra,* the transaction was held to be a sale; but in that contract there was this provision, which is wholly wanting in the one re- cited above, viz : · Under the contract in that case Pelton & Co. (the consignees of the pianos) were vested with the power and right of discharging themselves from any further obli- gations as respected all the pianos in any one invoice, by paying to the Chickerings the negotiable promissory note given therefor, but which for the purpose of disguising the real nature of the contract was called an " advance." This was the main question and provision in the contract on which the decision of the case rested. There were some other terms of the agreement commented on in the Chicker- ing case to be found in the contract in this case, such as, that the consignee had the right to sell at his own price, retain- ing the surplus as his commission, and was obliged to pay all charges of freight, etc.; but had it not been in connection with the other provision named we can not think that the court would have held it to have been a sale.

In the contract before us we find no provision that allows Harrington to take the wagons on his own account by pay- ing for them. The nearest to such a provision is the condi- tion found in the second clause of the contract, that appel-

lant might, at his option, after the expiration of twelve months from the date of the shipment, determine that the transaction should be a sale and Harrington be compelled to give his notes for the property consigned; but nowhere does Harrington have any option of the kind. Had such an one been given we have no doubt, under the authorities above cited, that the transaction would have been a sale.

We think, therefore, that the contract and transaction under it in delivering the wagons to Harrington did not amount to a sale, express or implied; by law it was a bailment.

If then it was a consignment, it made no difference whether the appellee had notice of appellant's claim to the property; he could get no right to it by the levy or otherwise. The condition of notice in appellant's refused instructions was unnecessary. The court below held as the law that the transaction was one of bailment; it ought then to have been consistent with the holding to have found for appellant. Gray v. Agnew, 95 Ill. 315.

Holding that the court below erred in finding there was a sale of the wagons to Harrington and in entering judgment against appellant, the judgment of the court below is reversed, and as the amount of the recovery is agreed on, and no question of fact to be settled by a jury, we render judgment in this court for the amount due in favor of appellant against appellee, to-wit, $963, and the costs of this court and the court below.

*Judgment reversed and judgment rendered here.*

Finding of facts to be incorporated in the final judgment, as being different from those found by the court below and upon which the judgment of this court is based, viz:

" And the court finds that the defendant in the execution, T. L. Harrington, held the wagons and property in question, the basis of the judgment herein, as the agent and factor of appellant and held the same for sale as such, and that he, the said Harrington, was not at the time of the levy or any time before or after, the owner of the said property, but on

the contrary, the appellant was at the time of the said levy and sale the *bona fide* owner of the said property and had the right to the possession thereof as against the said execution creditors of Martin & Co., and as against the appellee, the said sheriff, and as against any other persons whomsoever. The above finding is based solely on the written contract between the said appellant and the said T. L. Harrington appearing in evidence, dated March 4, 1892, and is the result of the legal construction given to the same by this court; and it is further found that there is no other evidence tending to establish a sale of the said goods by said appellant to said Harrington; and we further find that the amount of the judgment herein is fixed by the evidence and agreement of the parties thereto appearing in the record."