### LANG v. LEONARD, CROSSET & RILEY.

1. TRIAL—WHERE BOTH PARTIES REQUEST DIRECTED VERDICT IT IS PROPER TO DISPOSE OF QUESTION AS ONE OF LAW.

Where the issue presented was as to whether a delivery of potatoes by plaintiff to defendant constituted a sale or a bailment, and both parties moved for a directed verdict, it was proper for the trial judge to determine the question as one of law.

2. CONTRACTS—SALES — BAILMENT— ESTOPPEL — ONE CONSTRUING TRANSACTION AS A SALE MAY NOT AFTERWARDS CLAIM A BAILMENT.

Where plaintiff delivered to defendant at its warehouse potatoes which were mingled with others, receiving $200 and a written memorandum reciting that the potatoes were to be sold by a certain date, plaintiff, by insisting after said date that defendant accept them as vendee, placed his own construction on the transaction as a sale rather than a bailment, and he may not now maintain an action on the theory that it was a bailment, and that defendant, by selling at the market price on the date named, was guilty of conversion.

¹Trial, 38 Cyc. p. 1583; ²Contracts, 13 C. J. § 517.

3. SALES—BAILMENT—CONSTRUCTION OF CONTRACT.

 Where plaintiff delivered to defendant at its warehouse potatoes which were mingled with others, receiving $200 and a written memorandum reciting that the potatoes were to be sold by a certain date, the transaction constituted a sale rather than a bailment, with the option to plaintiff to demand the market price at any time up to the date named, and, if he had not exercised the option on that date, then the potatoes were automatically sold to defendant at the market price.

Error to Grand Traverse; Gilbert (Parm C.), J. Submitted October 11, 1927. (Docket No. 75.) Decided June 4, 1928.

Case by Walter Lang against Leonard, Crosset & Riley for an alleged conversion of potatoes. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*Griswold & Ganton,* for appellant.

*Thomas D. Meggison,* for appellee.

NORTH, J.     In this suit the plaintiff seeks to recover in consequence of an alleged conversion for 876 5/6 bushels of potatoes which he claims he placed in the defendant's warehouse at Buckley, Michigan, for storage.     These potatoes were delivered by the plaintiff to the defendant in the fall of 1924.     Upon receipt of the first load, defendant gave plaintiff its check for $200.     The plaintiff testified:—"I never paid any of the $200 back; they were to take it out of the potatoes."     Each load was weighed in and the plaintiff accepted therefor a written memorandum of the weight and date of delivery which bore the words, "These potatoes to be sold by May 1, 1925."     No other writing passed between the parties at the time relative to this transaction.     Before this controversy

---

[3]Bailments, 6 C. J. § 4; Sales, 35 Cyc. p. 32.

arose the agent who represented the defendant in this matter had died, and in consequence thereof only a limited amount of oral testimony was taken from which other details indicative of the exact character of the original transaction might be determined.   Plaintiff's potatoes were mingled with those delivered by others at defendant's warehouse; and, evidently with the knowledge of all concerned, the defendant sold and shipped out of this general supply from time to time as it saw fit.   At various times after the delivery of these potatoes to the defendant's warehouse and before May 1, 1925, the defendant urged the plaintiff to accept the then market price so that his potatoes might be shipped and the transaction closed.   The plaintiff refused to do so.   The market price of potatoes seems to have been on a decline during the winter and spring.   By May 1st the price had gone down to 35 cents per cwt.; and the defendants sold the plaintiff's potatoes at that price immediately after that date. The amount received was not sufficient to fully repay the $200 originally advanced to the plaintiff; but the balance was deducted by the defendant from a sale of other potatoes made by plaintiff to the defendant May 29th.   This was done with plaintiff's knowledge and without objection on his part.   There was a sudden rise in the market on or about May 29th or 30th; the price of potatoes went up to 75 cents per bushel; and on the latter date the plaintiff telephoned the defendant's agent at Buckley he would accept the market price above quoted.   Defendant thereupon took the position that it had purchased these potatoes May 1st and plaintiff's account therefor had already been settled. The plaintiff claimed the $200 was merely a loan to him; that he placed his potatoes with the defendant for storage only, and the latter had no rights in them except as a bailee.   At the close of the proofs each of the parties moved for a directed verdict.   The court held as a matter of law that the plaintiff was

entitled to recover, and left to the jury only the question of determining the market price of potatoes May 30th.   The plaintiff had a verdict and judgment. The defendant has appealed.

The recovery by the plaintiff was on the theory that the defendant's sale of these potatoes was unwarranted and constituted a conversion by it of plaintiff's property which it was holding in storage.   This presents the question as to whether the delivery by the plaintiff of his potatoes to the defendant under the circumstances resulted in a sale or a bailment.   Since each of the parties moved for a directed verdict, it was proper for the trial judge to determine this as a question of law. *Kyselka* v. *Assurance Co.*, 194 Mich. 430; *City National Bank* v. *Price's Estate*, 225 Mich. 200, 212.   The circuit judge held the relation of the parties to be that of bailor and bailee.

The weight receipts with the indorsement "these potatoes to be sold by May 1, 1925" were explained by the testimony and conduct of the plaintiff.   He testified:

"It is the custom of Leonard, Crosset & Riley in taking any potatoes at Buckley, to give waybills when they are taken in.   We generally surrender these waybills when we want to dispose of potatoes.

"Q. Did you ever turn in these waybills into the company?

"A. I did on the 30th of May."

He further testified:

"If he (defendant) wanted to gamble on them he had that privilege to ship and it did not matter to me when they wanted to, but I wanted the privilege of selling when I got ready; that has always been rulable."

Under the plaintiff's own testimony the transaction was a sale of the potatoes by the plaintiff to the defendant with the right reserved in the plaintiff to accept the prevailing market price any time on or be-

fore May 1, 1925. *Jones* v. *Kemp*, 49 Mich. 9. At no time did the plaintiff demand the return of his potatoes, and obviously did not contemplate doing so. He knew they were intermingled with those delivered by others, and that the defendant had a right to ship out of the general storage from time to time, and that it did so in the regular course of its business. On May 30th the plaintiff was insisting that the defendant accept the potatoes as a vendee. In so doing he placed his own construction on the transaction as a sale and not as a bailment. By the express terms of the memorandum the plaintiff did not have the right to require the defendant company to pay him the market price on a date subsequent to May 1st. Since plaintiff failed to sell on or before May 1st, by the terms of the written memorandum the transaction was automatically closed on that date at the prevailing market price. The defendant settled with the plaintiff on that basis, and he had no further right of recovery.

Many cases might be cited which are in accord with this determination, among those referred to in the note of 35 Cyc. p. 32, are the following: *Redfern* v. *Stacy*, 12 Ohio Cir. Ct. Rep. 36; *Richardson* v. *Olmstead*, 74 Ill. 213; *Woodward* v. *Boone*, 126 Ind. 122 (25 N. E. 812). See, also, *Powder Co.* v. *Burkhardt*, 97 U. S. 110. The receipt taken incident to the delivery of grain in *Redfern* v. *Stacy*, *supra*, was in almost the same terms as that in the instant case. It contained the provision: "To be sold not later than the middle of July without insurance." The court held that the paper on its face was a contract for the sale of grain; that the plaintiff had the option to demand the prevailing market price at any time up to the middle of July and if he did not exercise that option on or before the middle of July the wheat was by the contract then sold to the one to whom it had

been delivered.    On this record it must be held the transaction was a sale and not a bailment.

The judgment is reversed, without a new trial.

FELLOWS, WIEST, CLARK, MCDONALD, and SHARPE, JJ., concurred.

The late Chief Justice FLANNIGAN and the late Justice BIRD did not sit.