## C. L. BRETZ ET AL. v. H. P. DIEHL ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF BEDFORD COUNTY.

Argued May 9, 1887—Decided January 3, 1888.

1. The fundamental distinction between a bailment and sale is, that in the former, the subject of the contract, although in an altered form, is to be restored to the owner, whilst in the latter there is no obligation to return the specific article or its product.

2. If a miller, with whom is bailed the wheat of others, so commingles it with his own that the identity cannot be traced, the inconvenience of the confusion is thrown upon him; where, however, the owners have assented to the commingling, each remains the owner of his share in the mass.

3. When wheat is delivered on a contract of bailment, the mere fact that it is mixed with a mass of like quality, with the knowledge of the bailor, does not convert the transaction into a sale; and the bailee of the mass can have no greater control than if the share of each owner were kept separate.

4. In such case, if the commingled mass was received on simple storage, each owner is entitled on demand to receive his share; if for conversion into flour, each is entitled to his share of the product.

5. And, even though the bailee have contributed of his own wheat to the commingled mass, standing still as a bailee for the share of others, he may not abstract from the whole more than his own share.

6. Where points presented are based upon an assumption of facts, the truth or falsity of which from the evidence was properly before the jury, answers thereto stating the law as upon a finding of such facts will not be held to have been misleading.

Charge of Court below.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 205 January Term 1887, Sup. Ct.; court below, No. 326 April Term 1886, C. P.

The proceeding was a feigned issue ordered under the interpleader act, wherein Henry P. Diehl, Elmira Daugherty, Wm. Snell, Levi Smith et al. were plaintiffs, and Calton L. Bretz, and B. F. Mann, administrator of David F. Mann, deceased, were defendants. The issue was amended on April 26, 1886, so that the question to be tried by the jury was whether or not the right of property to 56 barrels of flour in barrels, 108 fourth barrels in sacks, 2 tons bran and 1½ ton mixed chop, levied on by the sheriff by virtue of a certain fieri facias in favor of Calton L. Bretz against Wm. D. Newman and another in favor of David F. Mann against the same defendant, as the property of said Wm. D. Newman, "was and still is in them, the above named plaintiffs, who are all the parties who had grain in store in said mill when the said flour in dispute was ground."

At the trial on November 25, 1886, it appeared that in 1885 William D. Newman, the defendant in the executions, was operating a steam flour mill in Bedford, at which mill, the plaintiffs in the issue had delivered wheat from time to time.

The court below, WILLIAM J. BAER, P. J., charged the jury as follows:

The defendants in this case were judgment creditors of William D. Newman, a miller operating a mill in this town; and they caused executions to be issued; and the sheriff levied on 80 or 90 barrels of flour and some bran, the property in controversy in this issue. The plaintiffs thereupon laid claim to this flour and bran, alleging that they were the product of wheat which they had severally delivered and deposited with Newman, the miller, as their bailee; and they gave notice of their claims to the sheriff. . . . . .

What is this transaction? In nearly every case the several plaintiffs have produced a receipt which was given by the miller at the time the wheat was put there, or at the time the last of it was put there. Those receipts are substantially the same in each case. The following is one of them:—

Charge of Court below.

CRYSTAL MILLS, BEDFORD, Aug. 18th, 1885.

Received of Henry Shoemaker twenty-seven bushels and forty-eight pounds of wheat for the use of H. Shoemaker.

[Signed] WILLIAM D. NEWMAN.

It is alleged on the part of claimants, the plaintiffs, that they, from time to time, delivered to Newman at his mill certain quantities of wheat and took receipts therefor; that it was put there for their own use; that it was to be ground out from time to time into flour, as they severally might order, or held subject to their orders, with the right in themselves to sell the same, or an equal quantity, from the common mass in which the wheat of the customers had been placed. And the plaintiffs further allege that Newman, with their knowledge, ground wheat out of this commingled mass and disposed of the product; and that becoming involved, executions were issued and levies made on the flour and bran in the mill, which they alleged were the product of wheat which had been put in this commingled mass, of which their wheat was part, it having been put in the same common receptacle; and they claim the flour and bran as the product of wheat from that mass. But the defendants allege that, though the wheat claimed to have been delivered by the plaintiffs was delivered, it was, with their knowledge and consent, mingled by putting it into a common receptacle; and that the plaintiffs did not and could not expect to get back the same wheat which they had put there, or the product of the same wheat, but only its equivalent. Their position is that the plaintiffs were not entitled to demand and receive their own wheat or its product, or wheat from the mass stored there, or the product of the same; but that the miller might, at his option, return to them other wheat, or the flour of other wheat.

The plaintiffs allege that the transaction detailed to you is a bailment; and hence the property and dominion never passed to Newman. The defendants allege that the transaction was a sale; and therefore the property and dominion passed to Newman, and he could sell it at his pleasure, and, in his hands, it was liable for his debts. We say to you that, if the dominion of the property absolutely passed to Newman, then the defendants, they being judgment creditors of Newman, could levy

Charge of Court below.

·on and sell the property.   The facts are for your consideration.
We can only define to you what is bailment and explain the
law ; you must then on the evidence and the law as we give it,
·decide the case.   The great question in this case is whether or
not the transaction between the miller and the plaintiffs was
·a bailment.   If it was a bailment, if the wheat was delivered
to be held for the use of the plaintiffs, then the plaintiffs can
recover ; if it was not, then they cannot.

A great deal has been said as to whether the flour found in
the mill and levied on was the product of some particular per-
.son's wheat, or the product of the wheat of the commingled
mass, or of some other wheat; the learned counsel on the one
.side alleging that it was not made from the identical wheat
·deposited there by these plaintiffs at all ; while on the other
hand it was alleged that it was so made, or at least that some
of the identical wheat must have entered into it.   We say to
you that under the law as we lay it down to you the only
question relating to the source of the flour and bran is, was it
the product of wheat ground from the commingled mass ?   The
·evidence seems to indicate that it was : You must determine,
however ; because if it was ground from other wheat that
never went into that common receiving bin or pit, then the
conclusion is plain that the plaintiffs cannot recover.

From all the evidence it is manifest that neither the miller
nor anybody else could, with certainty, say whether any, and
if any, how much, of the plaintiffs' wheat entered into this
flour and bran in controversy ; because of the fact of its having
been so commingled, the flour and bran having been made from
wheat taken from the receptacle in which the plaintiffs as well
as others, had deposited their wheat.   It may be possible that
.some grains of the plaintiffs' wheat entered into this flour.   Of
that you are as well able to judge as the court.   [The ques-
tion for you to determine, however, under the law as we lay it
down, is, was this flour and bran made from wheat from the
·commingled mass, after the wheat of these plaintiffs became
part of the mass ?] [11]

If some of the plaintiffs had wheat in the hands of Newman
and others had not, by reason of having got theirs all back
again, and you would find that· the transaction was a bailment,
then for such as have shown that they had wheat in the mass

at the time of the levy and before the flour was ground, you can find a verdict. Such verdict would not be dollars and cents, but generally for the plaintiffs, if you find, as the evidence shows, that the amount of wheat that should have been in store was more than the amount that still remained there; otherwise this form of verdict would not do, but it could be framed as a verdict for all the plaintiffs except those not proven to have had any deposit of wheat in the mill at the time the levy was made or the flour was ground. You will have to find, therefore, who are named as plaintiffs here that have not proven that they had wheat there. A list of their names can be handed to you. It is not a matter about which there is any controversy.

It has been said, and not denied by counsel on the other side, that when the identical thing delivered is to be returned, though in an altered form, such contract is one of bailment. To illustrate, where John Jones takes a bag of wheat to the mill to be ground into flour, the transaction is a bailment. He expects to get the flour from that bag of wheat, and he continues to be the owner of the wheat or its product. If it be destroyed by the burning of the mill, it is his loss and not the miller's; or if the sheriff come with an execution and levy upon it as the property of the miller, he cannot sell it. But where there is no obligation to return the specific article, but the receiver is at liberty to return another thing, he contracting at the time to make the return, the transaction is a sale and not a bailment; as when John Jones delivers twenty bushels of wheat to a miller and agrees to take from him, at some other time, twenty bushels of other wheat in return, or the flour and bran of twenty bushels of other wheat. This transaction is not a bailment, but a sale, and the property passes to the miller; and, in case the mill should burn, the loss would be his, and an execution creditor could levy upon it as the miller's property. You will notice the distinction: In one case the title remains in John Jones because he put his wheat there to be ground, with the expectation that the product of the particular wheat would be returned to him. In the other case the wheat passed to the miller because Jones delivered the twenty bushels to him with the expectation and understanding

that he would get back some other wheat, or the flour of some other wheat; and this latter transaction is a sale.

It has been held that where one takes wheat to a mill to be ground into flour, the contract is not a sale but a bailment; and the property in the flour is in the person who deposits the wheat, although it be, with his knowledge, mingled with wheat belonging to the miller. You will see that this case does not turn simply on the question whether the wheat was mingled or not; [but where one takes wheat to a mill and, with his consent, it is put into a common mass with the wheat of other customers, with the understanding that he shall not get the same wheat back, but other wheat from the commingled mass, or flour or other product from the same mass, this, too, would be a bailment, not a sale; and this would be so even with the knowledge of the depositor that some of the miller's wheat was also mingled with his and that of the other customers. In such case the property remains in the depositors and the transaction is a bailment.][12] But we go further; if the wheat of the customers was all thrown into the same sink or bin along with wheat belonging to Newman, with the understanding that the customers could not demand and receive back the identical wheat, nor wheat from the identical mass that they commingled there, nor the flour or product of the identical wheat, nor the product of the identical mass, but that they could get an equal quantity of wheat, or the product of an equal quantity of wheat in return; and that the miller, from time to time at pleasure, could sell the depositors' flour, the product of the wheat, for his own use, this would be an irregular deposit and would pass the property in the wheat and its product to Newman, the miller, as effectually as a sale; and the plaintiffs, in such case, could not recover. The difference between the two sets of cases is that in one the wheat is deposited with knowledge on the part of the depositors that it is being commingled and the manner of the commingling, and that is all. In the other it is likewise deposited with knowledge on the part of the depositors that it is being commingled and how it is being commingled; but, in addition to this, dominion has been given to the miller to dispose of it at pleasure, in the expectation on the part of the depositors that they can, in the future, get other wheat in return, or the product of other wheat. The

difference is that in one case dominion over the deposit has been given to dispose of it at pleasure and return other wheat or the product of other wheat; and this constitutes a sale. In the other case no dominion was given, but the miller was to return the wheat or its product from the commingled mass, which would be a bailment. By keeping these distinctions in view, you will be able to get along in the case.

Something was said about the parties becoming tenants in common by having deposited their wheat in the bin along with wheat belonging to the miller. Where parties put wheat in a common receptacle along with wheat belonging to the miller, they become tenants in common of the mass and it belongs to them all jointly; but even in such a case, Newman as miller, would still be a bailee, and would acquire no greater interest in the wheat than if they had deposited the same separately for the use of the depositors. A miller must use due diligence and care, as we have already said, in holding wheat deposited in his mill, and return it or its product on demand; and should he sell or dispose of it whether stored with his own or not, though he would become a co-tenant in one sense, yet, if you should find that part of the transaction was that the miller had absolute dominion over the wheat and could grind or sell it at pleasure, with an understanding that the depositors could only get from him in return an equal quantity of wheat or the flour and bran of an equal quantity of wheat, in such a case the miller would not be a bailee.

This, with the points that are to be answered, raises all that is necessary in this case.

Plaintiffs' points:

1. That if the jury believe that the plaintiffs from time to time delivered to Newman, at his mill, certain quantities of wheat and took receipts therefor, which stated that it was delivered for their own use, or the use of some other person; that it was to be ground from time to time into flour, as they severally might order, or held subject to any order they might give therefor, with the right in themselves to sell the same at any time; and that the plaintiffs confused and commingled their wheat by having it put into the same bin, sink, or heap; and that Newman ground wheat from the commingled mass in the sink or heap into flour; and when the execution

issued against Newman the whole amount put there by the plaintiffs was no longer on hand but the flour and bran now in dispute were; and that they are the product of wheat from the same sink or heap into which some portion of the plaintiffs', which still continued to be, no matter how much of it, yet remained; then as to such of the plaintiffs as the jury find have shown a balance of wheat in the mill, such as they can trace into the common mass from which the flour was made, the verdict should be for the plaintiffs.

Answer: This point is affirmed, unless the jury find from the evidence that the miller, Newman, by the nature of the transaction with the several plaintiffs, had such dominion over the wheat as authorized him at his pleasure, not only to grind the wheat into flour but also to sell the same for his own use. In which event the transaction would not be a bailment but a sale, and the point is refused.[1]

2. That under the facts and circumstances set forth in the first point, as to the manner in which this wheat was deposited with Newman, at his mill, such a transaction constitutes in law a bailment; and if Newman, without the knowledge of these plaintiffs, commingled his own wheat with that of the plaintiffs, he and all the depositors, as to the wheat in store, became tenants in common; and if Newman used more than he had deposited or placed in the common mass and the remaining wheat in the mass from which the flour was ground, not being sufficient at the time it was being ground to meet the demands of depositors, this flour, the product of said wheat, belonged to the plaintiffs, and the verdict should be for them.

Answer: The facts alleged by the first point, if so found, if there is no evidence to satisfy you that Newman had dominion over the wheat to grind and sell its product, constitutes a bailment, and if the transaction is found to have been a bailment the verdict should be for the plaintiffs.[2]

3. That the act of Newman buying wheat as his own and mingling the same with that of these depositors, the claimants, can in no way affect their rights to the common mass of which they were tenants in common, if the wheat was so placed in said common mass by Newman and used by him without their consent.

Answer: Affirmed.[3]

4. That when grains of different persons are thrown together on a heap or pile for storage as in this case, they are undistinguishable because of their nature; and the law gives each owner an interest in the bulk proportionate to his part thrown in; and, under the form of the present issue, it is not material whether the identical grains deposited by all the plaintiffs be shown. It is sufficient if, under the contract of bailment with Newman, they establish a right of property to the wheat, or the product thereof, which Newman kept, or was bound to keep in the mill subject to their orders.

Answer: If the jury find the transaction a bailment and not a sale, we affirm this point.[4]

Defendants' points:

1. That in this case the burden of proof is on the plaintiffs to show that they were the owners of the property in dispute; and if the plaintiffs have failed to show by a preponderance of testimony, that the property levied upon was theirs, the verdict should be for defendants.

Answer: Affirmed.

2. That if the plaintiffs have failed to show that all of the plaintiffs named in this case have an interest in the property in suit, then there can be no recovery in this action by the plaintiffs.

Answer: Refused.[5]

3. If the jury should find that there were other parties than the plaintiffs who had grain in the mill out of which the flour in suit, or part of it, might have been made, then the plaintiffs have not made out such a case as will entitle them to recover, and the verdict must be for the defendants.

Answer: Refused.[6]

4. That as the testimony shows that flour was constantly being manufactured out of wheat as it was placed in the mill, or from a common pile; and as the plaintiffs in this case have not shown that the flour levied on was made out of their wheat, but of wheat so commingled, they cannot recover, and the verdict must be for the defendants.

Answer: Refused.[7]

5. That as the plaintiffs have not shown that they were to get the identical grain placed in the mill by them, or to get the product of their identical wheat, but to reserve the right to

sell it to Newman, or to give orders for flour or get flour themselves in exchange therefor; and as they have shown that their grain went into the common pile, where it would be ground, this constituted a sale and not a bailment; and the verdict must be for the defendants.

Answer: Refused. The facts stated in this point, if found, would constitute a bailment. If the jury find that in case the plaintiffs after commingling, had sold, and that the miller was bound to deliver to the buyer wheat from the same commingled mass, or that orders given by them for flour had to be filled from flour made of the same commingled mass, or that any flour they would order, or were to have in exchange for the wheat, was to have been made from wheat taken from the same mass; in such case there could be a recovery. But, if the jury find the facts to be, that in case the plaintiffs after their wheat was mingled, could sell and that the miller was at liberty to and could at his pleasure comply with the sale, by delivering any other wheat of equal quality and not from the commingled mass; or, that any orders they might give for flour, or any flour they could get or were to have in exchange, could by the miller, at his own pleasure, be made from any other wheat he had and not necessarily from the comingled mass; such a transaction would not be a bailment, but an irregular deposit, partaking of the nature of a sale and there could be no recovery.[8]

6. That if the jury believe that the plaintiffs put their grain in the mill separately and not jointly, and at different times, which, with their knowledge, went into a common pile with the grain of other customers and with grain that Newman purchased, and was ground by him at his pleasure, and that said grain was placed there with the understanding that said parties could receive the equivalent in grain out of the common mass, or flour manufactured out of the grain in the mass, then said contracts between the plaintiffs and Newman were sales, and not bailments; and the verdict must be for the defendants.

Answer: In the opinion of the court, though the jury should find all the facts as stated in this point, this alone, under all the evidence in the case would not constitute the transaction a sale and warrant a verdict for the defendants. But if in addition to all the facts stated, the jury should also

find that Newman could at his own pleasure, sell and dispose of the flour and other products of the wheat for his own use, then the transaction, by the dominion over the same being given to Newman, would be a sale, and in such an event the verdict should be for the defendants.[9]

7. That under all the evidence in this case, the verdict must be for the defendants.

Answer: Refused. [10]

. The verdict of the jury was for the plaintiffs in the issue and, judgment being entered, the defendants took this writ, assigning for error:

1–4. The answers to the plaintiffs' points.[1 to 4]

5–10. The answers to the defendants' points.[5 to 10]

11, 12. The parts of the charge embraced in [ ] [11 12]

13. In not instructing the jury that as to the bran in suit, the plaintiffs could in no event recover.

*Mr. J. H. Longenecker* (with him *Mr. S. L. Russell* and *Mr. Wm. H. Koontz*), for the plaintiffs in error:

1. Instead of affirming the plaintiffs' first point, with the qualification made, the jury should have been instructed first to ascertain whether the facts therein assumed were warranted by the testimony, and attention should have been called to the manner in which the wheat was deposited in the mill. The answer to the plaintiffs' second point left the jury to pass upon a question of law, whether the transaction was a bailment. The unqualified affirmance of the plaintiffs' third point, which was but a partial statement of facts, without reference to the evidence in the cause, showing the manner in which the grain was deposited, would readily mislead the jury. In the plaintiffs' fourth point, it was broadly assumed that the grain was put on a pile, "for storage, as in this case"; and the answer erred in submitting the point to the jury with these assumptions of fact in it.

2. The second and third points of the defendants should have been affirmed. The grain being deposited at different times, and being commingled, and the mill constantly fed from the supply on hand, it was apparent that it was an utter impossibility to tell from whose grain the flour was made. The action must fall, because there is not such a joint interest in the parties plaintiff as enables them to maintain it.

3. Was the transaction a sale, or a bailment? When the same identical article is to be returned, or is to be returned in an altered form, that constitutes a bailment and the title to the thing deposited, or the product thereof, remains in the bailor. If, however, there be no obligation on the receiver to restore the specific article, or the product thereof, but he is at liberty to pay the price thereof, or to return a different article of equal value, then it constitutes a sale and the property is transferred by the delivery, the receiver acquires an absolute right thereto and the rights of the original owner rest entirely in his contract: 2 Kent Com. 590; Emory v. French, 1 Blackf. 353; Hurd v. West, 7 Cow. 752; Smith v. Clark, 21 Wend. 83 (34 Amer. D. 214); Mallory v. Willis, 4 N. Y. 85; Foster v. Pettibone, 7 N. Y. 433 (57 Amer. D. 531), Chase v. Washburn, 1 Ohio 244 (59 Amer. D. 625), Jones Bailm. 105, 106; Buffum v. Merry, 3 Mas. 478; Jenkins v. Eichelberger, 4 W. 121; Prichett v. Cook, 62 Pa. 193; Butterfield v. Lathrop, 71 Pa. 225; Wood v. Fales, 24 Pa. 247; Wilson v. Cooper, 10 Iowa 565; South Australia Ins. Co. v. Randell, L. R. 3 P. C. 101 (6 Moore P. C., N. S., 341). Under these authorities, the facts of this case clearly constitute a sale, and not a bailment.

*Mr. John H. Jordan* and *Mr. J. M. Reynolds* (with them *Mr. Alex. King*), for the defendants in error:

1. The defendants did not attempt to prove that there was a custom to receive wheat from different individuals, place it in a common receptacle and Mr. Newman be allowed to grind therefrom, of which they had knowledge; so that on the whole case the facts clearly established by the testimony, and which the jury were left to pass upon, were these:

*a.* That the wheat was deposited from time to time in Newman's mill with the distinct understanding that it was put there for the use of the respective depositors; that such depositors would have the right to sell this grain to Mr. Newman, or to any one else whenever he so choose; that if he desired flour he could exchange any of the wheat then in store for the flour so ordered, and that the exchange or sale by the depositor was a matter in the future to be determined between the parties.

*b.* That Newman, the miller, had no control or dominion

over this property, save that of protecting and keeping it in store for the individuals who had deposited it with him. He could not sell or part with the possession without the sanction and approval of the parties depositing the grain.

*c.* If Newman mixed wheat of his own with that placed on store, this act was without the knowledge or consent of the plaintiffs. The evidence will be searched in vain for any proof that either of the plaintiffs at the time of the delivery of this wheat to the miller, or subsequently, gave Newman any authority to grind it out or sell it, or assume the right to dispose of it in any manner whatever.

2. There was no evidence that there were other parties interested in this flour who were not parties on the record. It would have been error to affirm either the second or third of defendants' points: Van Winkle v. Young, 37 Pa. 214.

3. We contend that if Newman mixed his own wheat with that of the depositors without their consent, and there was not sufficient wheat in the mill to meet the demand of the depositors at the time the flour was ground out, and subsequently, at the time of the levy, that he lost all property in the wheat of his own so mingled, and that the remaining wheat, or the product therefrom, belonged to the plaintiffs in this case: McDowell v. Rissell, 37 Pa. 169; Rider v. Hathaway, 21 Pick. 305; Henderson v. Lauck, 18 Pa. 359; Wilkinson v. Stewart, 85 Pa. 255; 2 Kent Com. 365; Nolan v. Colt, 6 Hill 461; Young v. Miles, 20 Wis. 615; Warner v. Cushman, 31 Ill. 283; Dale v. Olmstead, 36 Ill. 150; Stephenson v. Little, 10 Mich. 441.

4. The distinguishing feature in the cases, by which the contract is determined to be one of bailment or sale, is whether the person receiving the deposit has the right to sell it on his own account, or otherwise appropriate it to his own use. If he have that right, the property in the thing passes; if not, he is a bailee. The fact of mingling his own property with that of other depositors whether with or without their consent when the goods are of the same quality, as grain, cannot affect their rights in the least. If appropriated by the bailee, or exchanged for like property, without the consent of the depositors, as in this case, their right of property is not gone, and the transaction remains a bailment. If the bailee grind from

the common mass his own share or more, the remaining stock belongs to the depositors under the terms of the contract.

OPINION, MR. JUSTICE CLARK:

The defendants in this case are judgment creditors of William D. Newman, a miller, operating a steam flouring mill in the town of Bedford.  Having issued executions, they levied on some eighty or ninety barrels of flour and some bran found on the floor of Newman's mill.  The plaintiffs claimed the property levied upon, alleging that it was the product of grain by them delivered to and held by Newman as their bailee. This is a feigned issue, framed under the sheriff's interpleader act to determine the dispute.

The plaintiffs, who are farmers residing in the vicinity of Bedford, brought their grain to this mill; no special contract or arrangement was made with the miller, by any of the plaintiffs, when they delivered their wheat, but, in accordance with the practice of the mill in all cases, except when wheat was at once paid for, a receipt or memorandum was given in the following form:

CRYSTAL MILLS, BEDFORD, PA., Sept. 12, 1884.
Received from D. W. Lee:

Amount.
Four hundred and fifty-five $\frac{14}{60}$ b. wheat,  .   $455.14
                                    " rye,
                                    " corn,
Two hundred and fifty-five $\frac{12}{32}$ " oats,   .   255.12
                                    " buckwheat.
For use of self.                          W. D. NEWMAN.

The mill was not arranged to keep the several lots of grain in separate parcels.  It was so constructed that all the grain delivered into it was hoisted to the second floor, emptied into a sink on the first floor, and from thence carried by elevators into a bin on the third floor, where, at times, there was a large accumulated mass of wheat.  Newman also purchased wheat in considerable quantities from time to time, which was delivered into the mill, and disposed of as the other wheat.  This promiscuous commingling of the grain into a common mass was in accordance with the known usage of the mill, which

was supplied for grinding from the mass of the wheat, without any discrimination as to the several lots or parcels in which it was received. The miller was, of course, under no obligation to restore to the plaintiffs the specific or identical wheat which he received, nor the product of it in flour; indeed this, owing to the manner in which the business was conducted, was practically impossible.

The fundamental distinction between a bailment and a sale is, that in the former, the subject of the contract, although in an altered form, is to be restored to the owner, whilst in the latter there is no obligation to return the specific article; the party receiving it is at liberty to return some other thing of equal value in place of it. In the one case the title is not changed, in the other it is, the parties standing in the relation of debtor and creditor. Thus in Norton v. Woodruff, 2 N. Y. 153, a miller agreed to take certain wheat and to give one barrel of superfine flour for every four $\frac{26}{60}$ths bushels thereof; the flour to be delivered at a fixed time, or as much sooner as he could make it. As the miller's contract was satisfied by a delivery of flour from any wheat, the transaction was held to be a sale. But in Malloy v. Willis, 4 N. Y. 76, wheat was delivered under a contract " to be manufactured into flour," and one barrel of the flour was to be delivered for every four $\frac{15}{60}$ths bushels of wheat; this transaction was by the same court held to be a bailment.

If a party, having charge of the property of others, so confounds it with his own that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon the party who produces it; where, however, the owners consent to have their wheat mixed in a common mass, each remains the owner of his share in the common stock. If the wheat is delivered in pursuance of a contract for bailment, the mere fact that it is mixed with a mass of like quality, with the knowledge of the depositor or bailor, does not convert that into a sale which was originally a bailment, and the bailee of the whole, can, of course, have no greater control of the mass than if the share of each were kept separate. If the commingled mass has been delivered on simple storage, each is entitled on demand to receive his share; if for conversion into flour, to his proper proportion of the product: Chase v.

Washburn, 1 Ohio N. S. 244; Hutchison v. Commonwealth, 82 Pa. 472. It makes no difference that the bailee had, in like manner, contributed to the mass of his own wheat; for, although the absolute owner of his own share, he still stands as a bailee to the others, and he cannot abstract more than that share from the common stock, without a breach of the bailment, which will subject him not only to a civil suit, but also to a criminal prosecution : Hutchison v. Commonwealth, 82 Pa. 472.

But where, as in Chase v. Washburn, supra, the understanding of the parties was that the person receiving the grain might take from it or from the flour at his pleasure, and appropriate the same to his own use, on the condition of his procuring other wheat to supply its place, the dominion over the property passes to the depositary, and the transaction is a sale, and not a bailment. To the same effect are Schindler v. Westover, 99 Ind. 395 ; Richardson v. Olmsted, 74 Ill. 213 ; Bailey v. Bearly, 87 Ill. 556, and Johnston v. Brown, 37 Ia. 200. In Lyon v. Lenon, 106 Ind. 567, the distinction is thus stated : "If the dealer has the right, at his pleasure, either to ship and sell the same on his own account, and pay the market price on demand, or retain and re-deliver the wheat, or other wheat in the place of it, the transaction is a sale. It is only when the bailor retains the right from the beginning to elect whether he will demand the re-delivery of his property, or other of like quality and grade, that the contract will be considered one of bailment. If he surrender to the other the right of election, it will be considered a sale, with an option on the part of the purchaser to pay either in money or property, as stipulated. The distinction is : Can the depositor, by his contract, compel a delivery of wheat, whether the dealer is willing or not? If he can, the transaction is a bailment. If the dealer has the option to pay for it in money or other wheat, it is a sale." This distinction is drawn of course, with reference to cases where grain is deposited in a mass, as in grain elevators, etc.

There are cases in which the doctrine of bailment has been carried much beyond the rule recognized in the cases we have cited. See Sexton v. Graham, 53 Ia. 181, and Nelson v. Brown, 53 Ia. 555. We think, however, the rule recognized in Chase v. Washburn, supra, and Lyon v. Lenon, supra, is a safe one,

and is more in accord with the well settled principles of the law relating to bailment.

But in the case at bar we are not called upon to say what would be the effect upon the transaction, if Newman had authority in the regular course of dealing to ship or sell the wheat of his customers on his own account. Undoubtedly he had a right to sell of the grain or flour to the extent of his own share; that is to say, what he contributed to the common stock and the tolls to which he was entitled. But the jury has found that he had no authority whatever to sell or to abstract from the common stock beyond the amount to which he was himself entitled. In the general charge, and also in the answers to the points submitted, the learned court instructed the jurors in the clearest manner, that if they should find from the evidence that Newman, by the nature of his dealings with the several plaintiffs, had acquired such dominion over their wheat, as authorized him, at his pleasure, not only to grind it into flour, but also to sell the same for his own use, the transaction must necessarily be treated as a sale, and that, in that event, the plaintiffs could not recover. This instruction was repeated with marked emphasis several times during the progress of the charge, and it seems quite impossible that the jury could have labored under any misapprehension as to the nature of the inquiry they were to make. The verdict of the jury was for the plaintiffs, and we must assume the facts which it is plain the jury, in arriving at such a verdict, must have found, viz., that Newman had no authority to sell the grain delivered into his mill under the arrangement with the plaintiffs; that is to say, their share of the common stock, nor the flour, which was the product thereof. It was the plain duty of Newman, however, to see to it that at all times the mill contained wheat or flour sufficient in amount to answer all demands under the bailment; failing in this, he was derelict in duty, and liable, under the law, for the appropriation and conversion unto his own use of property which did not belong to him.

Nor do we see that the court committed any error in the answers to the plaintiffs' points. These points according to the general practice, were based upon an assumption of facts, the truth or falsity of which was for the jury, and the law was stated as upon a finding of these facts by the jury. They were

relevant to the issue ; they disclosed clearly the specific facts assumed, which were fairly and reasonably consistent with the plaintiffs' theory of the case upon the evidence, and the opinion of the court thereon could not have had any weight with the jurors in their deliberations, unless the facts assumed were, in their judgment established by the proofs. The points certainly were not such as could be disregarded by the court, and we cannot see how the answers thereto could be supposed to have misled the jury.

The learned court defined a bailment and a sale, marking the distinguishing features of each, and as the nature of the transaction depended not wholly upon the written receipt, but in part on verbal evidence as to the method of conducting the business, the question was undoubtedly one proper to be submitted to the jury. The court instructed the jury, that if certain facts existed the transaction was a sale, otherwise it was but a bailment, and the question was proper for the jury, whether or not, under the instruction of the court, according to the facts as the jury might find them, the transaction was a bailment or a sale.

On a careful review of the whole case, we find no error, and the

Judgment is affirmed.