Allen *v.* Marshall et al., Receivers, Appellants.

Argued September 25, 1928.   Before MOSCHZISKER,
C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER,
and SCHAFFER, JJ.

*W. S. Clark,* with him *J. H. Alexander,* for appellants.
—E. Culbertson's authority as general manager of
North Penn Refining Company, including his power to
sell any of its assets, was removed with his consent on
July 15, 1926, and he was not undertaking to act as
such on July 24, 1926.

No occurrences after the appointment of the receivers
affect the title to the tank of wax distillate.

*Edwin W. Smith,* of *Reed, Smith, Shaw & McClay,*
with him *Sidney B. Blackman,* for appellees.—Under the
contract of April, 1926, the refining company held the
wax distillate as a bailment, and the oil company had a
right to its return on the nonfulfillment of that con-
tract: Bretz v. Diehl, 117 Pa. 589; Laflin & Rand
Powder Co. v. Burkhardt, 97 U. S. 116; Sturm v. Boker,
150 U. S. 312.

There was a return to the oil company of the wax dis-
tillate on July 24, 1926, in the form of a sale, evidenced
by an invoice and delivery of possession.

At most this sale was voidable, and neither the North Penn Refining Company nor the receivers did anything to avoid it; on the other hand, there was a complete ratification by the acts of the oil company and the receivers of Culbertson: Palmer v. Flooring & Mfg. Co., 62 Pa. Superior Ct. 598; Kelsey v. Bank, 69 Pa. 426.

OPINION BY MR. JUSTICE SCHAFFER, November 26, 1928:

A declaratory judgment was entered against defendants from which they appeal.

The controversy is over a fund of $11,585.54, representing the proceeds of a tank of wax distillate claimed by plaintiff as belonging to him and by defendant receivers to be the property of their company.

There had been a course of dealings between plaintiff and the North Penn Refining Company in which the former shipped and charged to the latter wax distillate, which it refined, delivering to plaintiff a commodity called raw neutral produced from the distillate by the process of refining. Upon receipt of this material plaintiff credited the North Penn Company with the amount of raw neutral delivered at a price agreed upon. On July 24, 1926, there had not been turned over to plaintiff the quantity of raw neutral which he was entitled to receive, the state of the accounts showing the North Penn Company owing him a balance of $9,796.84. The day named, Emery, a representative of plaintiff, went to the North Penn Company's refinery, and purchased, as plaintiff claims, from D. H. Culbertson, who had been secretary and manager of its plant, a tank of wax distillate to apply on the account due by it to him. Emery told Culbertson that the account due plaintiff was too large, that he was not satisfied with the financial condition of the North Penn Company and proposed purchasing a tank of wax distillate to offset the account. A large part of the distillate in the tank had come from plaintiff; it was mixed with some which had been pur-

chased elsewhere. Culbertson told Emery that he had no power to conclude the transaction as he had been displaced as manager, that the management of the company had been placed in the hands of Sterns Marshall. Some question was raised in the court below as to the legality of the directors' meeting when Culbertson was removed as manager. We think this of not much importance in the decision of the case. He was in fact in charge of the property. Emery threatened legal proceedings against the company and finally Culbertson consented to a sale of the distillate to plaintiff, stipulating that it would have to be confirmed by Marshall, who denies that he acquiesced in the arrangement which was made. The tank was sealed and a placard was placed on it containing the announcement that it belonged to the North Penn Company. On the afternoon of the day these transactions took place it was arranged between the parties that 245 barrels of the distillate should be run from the tank into the refinery to enable it to operate over Sunday. It was stipulated that this should be charged by plaintiff to the North Penn Company. On July 27, Sterns Marshall and H. M. Wick were appointed receivers for the company. Subsequently a meeting was held between plaintiff and the receivers in which the title to the distillate was discussed, and, without agreeing on that question, it was decided to be best for all concerned that the distillate be used at the refinery, the proceeds derived from its sale to be deposited in escrow. As an incident of the arrangement entered into a check was given by plaintiff to the receivers for $1,788.69 to cover the balance due by him to the North Penn Company, up to the time of the receivership, figuring the value of the entire contents of the tank, after deducting the 245 barrels withdrawn, less the amount of plaintiff's claim.

The position of the receivers is that, if the sale of the distillate is held valid, plaintiff will be given a preference over other claimants against the North Penn Com-

pany. If the receivership had been brought about because of the insolvency of the company, this might be so, but it nowhere appears in the record that the receivers were appointed for that reason. They may just as well have been raised for other cause. This being so, the question of plaintiff obtaining a preference does not arise. If the transaction was one which would have been valid if made by the corporation itself, the fact that it was made by the receivers does not make it any the less so. Unless it appears that a corporation is in fact insolvent when receivers are appointed for it, the receivers do not have the rights of levying or attaching creditors, only the rights possessed by the corporation itself: Deere Plow Co. v. Hershey, 287 Pa. 92; Jennings v. Supreme Photoplay Co., 289 Pa. 240; Shipler v. New Castle Products Corp., 293 Pa. 412.

Had plaintiff's petition for the declaratory judgment not set forth that the transaction between the parties of the delivery of the distillate by him to the North Penn Refining Company and the turning over to him of the commodity made from it constituted sales, it might well be that the dealings could properly be held to give rise to the relation of bailor and bailee: Bretz v. Diehl, 117 Pa. 589; Laflin & Rand Powder Co. v. Burkhardt, 97 U. S. 116; Sturm v. Boker, 150 U. S. 312; 6 C. J. 1086.

What took place between Emery and Culbertson, the sealing of the tank of distillate, the notice of plaintiff's ownership placed upon it, the subsequent sale of part of the distillate to the North Penn Company by plaintiff and thereby the recognition of his ownership of it, the invoicing of the commodity to him and the giving of his check for the balance due to the receivers and their acceptance of it were sufficient in view of the relation between the parties growing out of their unusual dealings to vest title to the tank of distillate and consequently to the fund before us in plaintiff. Our Insolvency Act of June 4, 1901, P. L. 404, section 19, recognizes the com-

pounding and compromising of claims by receivers if done in good faith and after proper inquiry.

The judgment is affirmed.